UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

United States of America

        v.                                     Case No. 2:10-CR-122-wks-jmc-2

Raul Suriel

### REPORT AND RECOMMENDATION
(Docs. 65 and 78)

Defendant Raul Suriel has moved pursuant to 28 U.S.C. § 2255 to vacate the sentence imposed upon him on June 27, 2011.   The sentence was issued after Suriel entered a plea of guilty to one count of aiding and abetting in the importation of 50 kilograms of marijuana, in violation of 21 U.S.C. §§ 952 and 960.   Suriel now contends that he received ineffective assistance of counsel at sentencing in violation of the Sixth Amendment to the Constitution.   The government agrees that re-sentencing is required, and asks the Court to vacate Suriel's sentence.   In light of the government's consent, I recommend that the motion to vacate be GRANTED.

### Factual and Procedural Background

**A.      Offense Conduct**

On August 14, 2010, the Border Patrol arrested Suriel and co-defendant Jonathan Moreno as the pair attempted to smuggle into the United States from Canada three duffel bags containing approximately 54.8 kilograms of marijuana and 997 grams of hashish by automobile.   (PSR ¶¶ 7-9.)   In a post-arrest statement, Suriel stated that "a close friend"

had solicited him to engage in the smuggling enterprise, but did not divulge the identity of the friend.   He further stated that he had called an individual in Canada known as "Bossman" to set up the transaction.   Suriel subsequently rented the vehicles used in the venture, and was instructed to pay Moreno for his participation.   He also indicated to law enforcement that this was his second smuggling trip in the past three weeks.   (PSR ¶ 11.)

## B.   Proceedings in the District Court

On March 4, 2010, Suriel appeared with counsel before U.S. District Court Judge William K. Sessions III and pled guilty pursuant to a written plea agreement to one count of aiding and abetting in the importation of 50 pounds of marijuana, in violation of 21 U.S.C. §§ 952 and 960.   A presentence report ("PSR") was prepared by the U.S. Probation Office in anticipation of sentencing.   The PSR placed Suriel's base offense level under the drug quantity table set forth in U.S.S.G. § 2D1.1 at level 22, concluding that his two trips involved a total of 60-80 kilograms of marijuana.   (PSR ¶ 17.)   No specific offense characteristics applied, and Suriel was accorded a three level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1.

The PSR did not accord Suriel the two level reduction found at U.S.S.G §§ 2D1.1(b)(11) and 5C1.2, commonly known as the "safety valve" reduction.   The PSR noted that although Suriel satisfied the first four criteria for application of that offense level reduction, he had not satisfied the fifth criterion, which required him to disclose to the government all information he had concerning the offense conduct.   Suriel sustained one criminal history point, placing him in Criminal History Category ("CHC") I. Accordingly, the PSR concluded that he faced an advisory sentencing guideline range of

30-37 months, based on an adjusted offense level 15/CHC I.    (PSR ¶ 51.)

Suriel appeared for sentencing on June 27, 2011.    His attorney, Naresh K. Dewan, Esq., had filed a sentencing memorandum prior to sentencing asking that the Court impose a non-guideline sentence of a term of probation.    (Doc. 54.)    Attorney Dewan stated at the hearing that the PSR contained no disputed factual issues other than an argument that the drug quantity for which Suriel should be held responsible was 40-60 kilograms of marijuana.    Attorney Dewan also argued that the factors set forth in 18 U.S.C. § 3553(a) supported his request for a sentence of probation.    Specifically, he argued that (1) Suriel's drug quantity calculation in the PSR had been increased beyond the actual drug seizure by two levels by virtue of Suriel's voluntary admissions at the time of his arrest; (2) that Suriel was entitled to a two-level reduction from the applicable sentencing guideline range for a purported minor role in the offense as a courier pursuant to U.S.S.G § 3B1.2(b); and (3) that Suriel had demonstrated extraordinary rehabilitation as evidenced by his employment and having otherwise "turned his life around."

Judge Sessions raised the fact that Suriel had declined to meet with the government and disclose all of the information he had concerning the offense conduct.    Such a meeting would have satisfied the fifth criterion for application of the two level "safety valve" reduction found at U.S.S.G. §§2D1.1(b)(11) and 5C1.2(c).    As noted above, Suriel told the arresting officers that he had been recruited "by a close friend," but did not reveal the friend's name.    Suriel had also declined offers to provide a full disclosure.

Attorney Dewan informed the Court at sentencing that Suriel "had nothing new to add, even though it is the complete and truthful story."    When pressed further, Attorney

Dewan explained that his client was "willing to make a proffer, but he has nothing new to add to what he has already told.   So he is not, in my opinion, Judge, required to make up new facts.   If he doesn't know, he doesn't know."   (Doc. 70-2 at 4-5.)   Dewan argued that his client was nevertheless entitled to "a safety valve departure" based on Suriel's "willingness to testify complete and truthful (sic)."   (Doc. 70-2 at 4.)   The government informed the Court that it had met with Suriel that morning, and that he had declined to participate in the safety valve interview.

Judge Sessions rejected the conclusion of the PSR that Suriel's beginning offense level calculation was 22 (60-80 kilograms of marijuana), terming proof of the drug quantity of Suriel's earlier smuggling insufficient to reach that level.   Suriel's opening offense level was thus placed at 20 (40-60 kilograms of marijuana).   (Doc. 70-2 at 23.) Judge Sessions agreed with the argument that Suriel's role in the offense was minor, warranting an additional two-level reduction.   He also found that Suriel had demonstrated an acceptance of responsibility, warranting a three-level reduction under § 3E1.1 and yielding an adjusted offense level of 15.

Judge Sessions elected to depart two additional levels based on the totality of the circumstances under U.S.S.G § 5K2.0.   He explained that the departure was warranted because of Suriel's "full disclosure to the agents when he was arrested," his "strong family circumstances at this point," and the fact that Suriel had done extraordinarily well while on release.   (Doc. 70-2 at 24.)   The departure led to Suriel being placed at level 13/CHC I. Judge Sessions thereupon imposed a sentence of a year and a day; a sentence that was within the sentencing guideline range.

C.      **The Instant Motion**

Suriel did not appeal his conviction and sentence.   On July 5, 2011, proceeding *pro se* initially, he filed the instant motion to vacate his conviction pursuant to 28 U.S.C. § 2255, claiming that he received erroneous legal advice regarding the "safety valve" procedure.   Suriel asserts that he was told by Attorney Dewan and Christopher Reese, a legal assistant associated with Dewan, that in order to qualify for the "safety valve" reduction, he would have to meet with the government "and agree to testify against anyone who might be arrested as a result of the information that [Suriel] would provide to the government."   (Doc. 65 at 2).   He now claims that this advice was in error.

Suriel has filed two "affirmations" from Reese in support of his motion.   In the first, which was digitally signed by Suriel himself, it is alleged that Reese had responsibility for communicating with Suriel in the course of Attorney Dewan's representation.   The affirmation further states that:

> Among other things, I specifically informed Mr. Suriel that if he were to participate in such a proffer, if anyone were ever arrested, he would have to testify against that person(s) in open court, and that that person(s) family members and friend would likely be present during his testimony.   I provided this information to Mr. Suriel, and it was based on my understanding and conversations I had with Mr. Dewan.   However, shortly after sentencing was imposed, I realized that the information I conveyed to Mr. Suriel was wrong and had not, in fact, been communicated to me by Mr. Dewan.

(Doc. 65-1 at 1.)   In a second affirmation, signed by Reese himself, Reese states that Suriel's case was Attorney Dewan's first federal criminal case, and that he (Reese) was primarily responsible for dealing with Suriel.   He reiterates the statements made in the first affirmation, confirming what he told Suriel about the "safety valve" procedure, and

restates his belief that this information was incorrect.   Reese further attests:

> it is my sincere belief that, but for the incorrect information provided to Mr.
> Suriel, Mr. Suriel would have participated in the safety valve proffer, and
> received a significantly lesser term of imprisonment – assuming the Court
> would have imposed any term of imprisonment.   Mr. Suriel's decision not
> to participate in the safety valve provision resulted from incorrect[] legal
> advice and information, and I am respectfully requesting that his motion be
> granted.

(Doc. 71-1 at 3.)

The government initially opposed the motion to vacate.   The Court appointed

counsel to represent Suriel, and a hearing has been scheduled.   In its most recent filing,

however, the government states that "[i]n light of Suriel's presentation and the affidavits

submitted in support of his collected filings, the government believes resentencing is

required in this case, and asks the Court to vacate the sentence and schedule the matter for

resentencing."   (Doc. 79.)

### Discussion

Under the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 687-88

(1984), a defendant raising a claim of ineffective assistance must show (1) that his

attorney's performance "fell below an objective standard of reasonableness" and (2) that

prejudice resulted – *i.e.,* "that there is a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different."   In order to

satisfy the *Strickland* test, a petitioner must meet the standards of both components.

*Strickland*, 466 U.S. at 700.

Here, the government concedes that Suriel is entitled to re-sentencing.   By

conceding, the government implicitly agrees that Suriel received ineffective assistance of

counsel in violation of his rights under the Sixth Amendment, and that he suffered prejudice as a result.   These conclusions have support in the record.   Specifically, the Reese "affirmations" attest: (1) that Suriel received legal advice that is now deemed by the parties to have been inaccurate, and (2) that absent such advice, Suriel would likely have offered additional cooperation and, as a result, been eligible for a lesser sentence.   The latter statement is corroborated by Suriel's own filings.   Finally, Reese's affirmations suggest that Attorney Dewan essentially abandoned his obligation to provide competent legal advice to Suriel, leaving that task to the legal assistant.

A resentencing may or may not yield a sentence different from that initially imposed.   Judge Sessions found that there was insufficient proof to place the drug quantity at level 22 and a truthful safety valve disclosure by Suriel may be sufficient to change that conclusion.   Further, Suriel in fact received a two level departure for his "full disclosure" to the arresting officers.   Nevertheless, the parties are in agreement on the ineffective assistance of counsel issue.   Therefore, I recommend that Suriel's motion to vacate (Doc. 65) be GRANTED, that his sentence be vacated, and that the matter be scheduled for re-sentencing.   The hearing on Suriel's § 2255 motion, currently scheduled for November 15, 2011, is hereby CANCELLED, and Suriel's *ex parte* motion for approval of travel expenses (Doc. 78) is DENIED as moot.

Dated at Burlington, in the District of Vermont, this 4th day of November, 2011.


/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge


Any party may object to this Report and Recommendation within fourteen days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2), 6(a), 6(d); L.R. 72(c).   Failure to timely file such objections operates as a waiver of the right to appellate review of the District Court's adoption of such Report and Recommendation.   *See* Fed. R. Civ. P. 72(a); *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).